**UNITED STATES of America, Plaintiff,**

v.

**David CASLAN, Marshall Shelley, Ann Caslan, Chris Macaslan, Edwin Macaslan, Russell Macaslan, Defendants.**

No. IP 92–36–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

June 16, 1992.

## ENTRY DENYING MOTION
## TO SUPPRESS

BARKER, District Judge.

This matter is before the Court to resolve Defendant Chris MacAslan's motion to suppress statements he made to I.R.S. agents during an interview on July 12, 1989. The Court has conducted an evidentiary hearing on that motion, and based on the parties filings and the evidence presented, and being duly advised finds that the motion to suppress should be denied.

### I. Factual Findings

On October 7, 1988, the I.R.S. notified Chris and Nancy MacAslan that it was auditing their 1985, 1986, and 1987 tax returns. Shortly thereafter, the MacAslans executed Form 2848, which is entitled "Power of Attorney and Declaration of Representative." By signing Form 2848, the MacAslans' designated James J. Schneider, James C. Hoppel, John C. Hurlbut, Elizabeth A. Laskowski, and Brian Rhea as their "attorney(s)-in-fact to represent the taxpayer(s) before any office of the Internal Revenue Service for the following tax matter(s)[:] ... Individual 1040 1984, 1985, 1986, 1987, 1988."

On July 12, 1989, I.R.S. Special Agents Glen Lloyd and Craig Casserly, aware that MacAslan had signed and filed Form 2848, arrived unannounced at MacAslan's house at approximately 6:00 p.m. The agents identified themselves as I.R.S. agents, and, reading from a card entitled "NON–CUSTODY ADVISE" (Exhibit 1), informed MacAslan:

As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws and related offenses.

In connection with my investigation of your tax liability (or other matter) I would like to ask you some questions. However, I first advise you that under the 5th Amendment to the Constitution of the United States I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything

Timothy M. Morrison, Office of the U.S. Atty., Indianapolis, Ind., for plaintiff.

Richard R. Donnelly, Columbus, Ind., Reuben Hill, Brett J. Miller, Gary Price, Robert Keene, Ed F. Schrager, Richard Ford, Indianapolis, Ind., for defendants.

which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of an attorney before responding.

MacAslan did not invoke his right to remain silent, ask the agents to leave, or ask or attempt to confer with his "declared" attorney or accountant.

The I.R.S. agents interviewed MacAslan for approximately ninety (90) minutes. MacAslan concedes that the agents were not rude, overbearing, or "pushy," and throughout the interview, MacAslan was cordial, cooperative, and appeared to the agents to be in control of his faculties. MacAslan testified that at the time of the interview, despite the express wording of the rights apprisal given by the agents, he was of the impression, based on what his attorney had told him, that as to him, only his civil audit was ongoing and that any criminal investigation "probably related to his brother" (a co-defendant in the case at bar).

## II.  Conclusions of Law

MacAslan moves to suppress the statements he made to the I.R.S. agents during the July 12, 1989 interview; he claims those statements were obtained in violation of his Fifth, Sixth, and Fourteenth Amendments rights.

MacAslan claims the I.R.S. agents violated his Sixth Amendment rights by failing to communicate with MacAslan through his declared representative. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." This Sixth Amendment right to counsel, however, "does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin,* — U.S. —, —, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158, 167 (1991) (quotations and citations omitted).

■ An interrogation is like any other "critical" pretrial event; the possibility that the encounter may have important consequences at trial, standing alone, is insufficient to trigger the Sixth Amendment right to counsel. *Moran v. Burbine,* 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Even when there is an existing attorney-client relationship, as there was in *Moran,* "until such time as the government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified, the Sixth Amendment right to counsel does not attach." *Id.* (citing *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)) (quotations omitted).

■ Formal charges had not been initiated against MacAslan when the I.R.S. agents interviewed him on July 12, 1989, and therefore MacAslan's Sixth Amendment right to counsel had not at that time attached. Because MacAslan was not yet entitled to the protections of the Sixth Amendment, his claim that the I.R.S. violated his rights under the Sixth Amendment by conducting this interview without his attorney being present is without merit.

MacAslan does not challenge that adequacy of the *Miranda* rights apprisal. Instead, he claims that the I.R.S. agents, by failing to communicate with MacAslan through his declared representative, violated his "right to counsel" under the Fifth Amendment. *See McNeil v. Wisconsin,* — U.S. at —, 111 S.Ct. at 2208, 115 L.Ed.2d at 167. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established a number of Fifth Amendment protective rights designed to "counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present [during questioning]." *McNeil v. Wisconsin,* 111 S.Ct. at 2208. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must all ongoing interrogations cease, but the suspect may be not approached for

further interrogation without counsel being present. *McNeil v. Wisconsin,* 111 S.Ct. at 2208; *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990); *see Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ However, MacAslan's Fifth Amendment argument fails for two reasons. First, MacAslan's signed and filed Form 2848, executed in connection with the civil audit, is insufficient to constitute an invocation of the *Edwards/Miranda* "right to counsel." Form 2848 (Exhibit B) does not demand communication (either exclusively or preliminarily) through the declared representative, it only authorizes it:

> The attorney(s)-in-fact ... are authorized, subject to revocation, to receive confidential information and to perform any and all acts that the principal(s) can perform with respect to the above-specified tax matters....

Second, the *Edwards/Miranda* "right to counsel" only applies when an interview or interrogation is custodial. *McNeil v. Wisconsin,* — U.S. at —, 111 S.Ct. at 2208, 115 L.Ed.2d at 167; *Miranda v. Arizona,* 384 U.S. at 477, 86 S.Ct. at 1627. Because the July 12, 1989 interview was not custodial, MacAslan's Fifth Amendment claim is without merit.

MacAslan's final argument for suppression is that the I.R.S. agents violated his due process rights under the Fourteenth Amendment. MacAslan alleges that the agents violated his due process rights, because, by interviewing him as a suspect in the absence of the declared counsel after he had signed Form 2848, the agents violated I.R.S.' internal policy. MacAslan also maintains, citing *United States v. Tarlowski,* 305 F.Supp. 112 (E.D.N.Y.1969), that the I.R.S. agents violated due process by failing to notify MacAslan that the I.R.S. investigation had changed from civil to criminal, and that in that respect the I.R.S. agents were "devious and deceptive," in that MacAslan was confused and thought the I.R.S. agents were investigating his brother, David MacAslan.

■ MacAslan has failed to establish that the I.R.S. agents violated I.R.S. internal policy. According to Special Agent Lloyd's testimony, I.R.S. policy instructs that I.R.S. agents should not interview a suspected tax violator who has signed and filed a Form 2848, unless there is a "conflict of interest" on the part of the designated attorney. Although Defendant's Exhibit E indicates that on August 21, 1989, Agent Lloyd believed that, despite the fact that MacAslan's attorney was then representing three other potential subjects in this investigation, there was no existing conflict of interest, the Court finds credible Lloyd's uncontested testimony that prior to and on July 12, 1989, after discussing this case with his "group manager" and "general counsel," he and Agent Casserly believed that such a "conflict of interest" was possible. Thus, Agents Lloyd and Casserly decided to interview MacAslan on July 12, 1989 without going through his declared counsel. Whether the agents subsequently changed their minds concerning potential conflicts of interests is immaterial to the Court's conclusion that, when the Agents interviewed MacAslan on July 12, 1989, they were acting under the "conflict of interest" exception and thus did not violate I.R.S. policy.

■ In any event, whether or not the I.R.S. agents violated internal policy by interviewing MacAslan in the absence of his declared attorney, after he had signed and filed Form 2848, the due process clause is not implicated unless "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres* 440 U.S. 741, 752–53, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979); *United States v. Piper,* 681 F.Supp. 833 (M.D.Ga.1988) (violation of I.R.S. internal policy, where defendant did not rely on such policy, did not necessitate suppression or violate due process). There is no evidence that MacAslan knew of or relied on this internal policy. The evidence presented indicates that the policy was promulgated for intra-agency use only, and sup-

pression based on an alleged violation of this policy is not warranted.

■ Finally, MacAslan has not presented evidence that the agents were in fact "deceptive" or "devious." To the contrary, MacAslan testified that it was his own attorney, not the I.R.S. agents, who mislead him into believing that the agents were conducting their criminal investigation only of his brother. The *Tarlowski* case, cited by defense counsel, is neither applicable nor persuasive here. Agents Lloyd and Casserly did not limit or refuse MacAslan's reliance on another person to be present during questioning, nor did the I.R.S. agents make a "deliberate and conscious attempt ... to deceive and mislead the defendant into the belief that he was the subject of only a civil litigation."[1] *See United States v. Tarlowski*, 305 F.Supp. at 115; see *Powers v. Coe*, 728 F.2d 97, 106 (2nd Cir.1984) (*Tarlowski* is "never followed").

### III. Conclusion

Accordingly, the Court finds no legal reason to suppress the statements MacAslan made to I.R.S. agents during the July 12, 1989 interview. MacAslan's motion to suppress is DENIED.

It is so ORDERED.

---

**1.** Indeed, the I.R.S. agents specifically warned MacAslan, "As a special agent, one of my func- tions is to investigate the possibility of criminal violations...."