UNITED STATES of America,
and
Carl C. Rosen, Revenue Agent of the Internal Revenue Service, Petitioners,

v.

Alvin I. MALNIK, Respondent.

Civ. No. 71–1850.

United States District Court,
S. D. Florida.

April 10, 1972.

Robert W. Rust, U. S. Atty., by P. D. Aiken, Asst. U. S. Atty., Miami, Fla., for petitioners.

Harris, Burman & Silets, Chicago, Ill., Corlett, Merritt, Killian & Okell, Miami, Fla., for respondent.

## ORDER DISMISSING PETITION TO ENFORCE INTERNAL REVENUE SUMMONS

JAMES LAWRENCE KING, District Judge.

Petitioner, Carl K. Rosen, an Internal Revenue Agent, employed in the audit division of the office of the District Director of Internal Revenue, Miami, Florida, is conducting an investigation of the income tax returns of Alvin I. Malnik and his wife, Deborah C. Malnik, for the years 1959, 1960, 1962 and 1963. The Respondent, Alvin I. Malnik, is a resident of Miami Beach, Florida.

On March 16, 1971, Petitioner Rosen issued and served a summons on Respondent Malnik, pursuant to the provisions of Section 7602, Title 26, U.S.C. The summons directed the Respondent to appear before Rosen on March 29, 1971, at the offices of the Internal Revenue Service at Miami, Florida to give testimony relating to the tax liability of Respondent for the years 1959, 1960, 1962 and 1963. It also directed the Respondent to bring with him and produce for examination, the following books, records and papers:

"General ledgers; general journals; accounts receivable ledgers, escrow ledgers, cash receipts and disbursement journals; fee income invoices and journals; purchase invoices; deposit tickets, cancelled checks and bank statements of the domestic and foreign bank accounts from which accounts you had the right of ownership and withdrawing funds; closing statements, purchase, sales and loan agreements from which agreements you derived income, expenses, loans for yourself and third parties, and interests in various enterprises and franchises; broker statements, partnership agreements, journals and ledgers, all specifically related but not limited to your law practice, real estate transactions, mortgage and loan businesses, banking business and investments in closely held and publicly owned corporations. The records summonsed are those of all corporations in which you were either a stockholder, officer or director and which records are now in your possession or control, including domestic and foreign corporations, including World Bank of Commerce, Ltd., and the World Bank of Commerce (Overseas), Ltd. of the Bahamas. The foreign banks referred to above include but are not limited to the Barclay Bank and the Bank of World Commerce, Bahamas, and the International Credit Bank, Switzerland."

The date for Respondent's appearance with his records was continued by agreement to and including April 21, 1971. On April 20, 1971, the date for compliance by him was further extended until

May 4, 1971. Thereafter, counsel for Respondent conferred with representatives of the Internal Revenue Service and, as a result, it was agreed by both counsel for the Internal Revenue Service and counsel for the Respondent that the time for compliance with the summons would be continued and that in lieu of the appearance of Respondent that the Internal Revenue Service would accept a written statement directed to Petitioner Rosen and signed by counsel and Respondent indicating that the Internal Revenue Service would accept a declaration that Respondent would claim his constitutional privileges to such of the questions which were asked of him to which said privilege attached and to those records enumerated in the summons which were in his possession and to which the privilege also attached.

On December 15, 1971, the United States of America and Carl K. Rosen filed Petition to enforce the Internal Revenue summons pursuant to the authority of Sections 7402(b) and 7604(a), Internal Revenue Code, 1954. Based upon said Petition and supporting affidavit of Petitioner Rosen, this Court entered an order upon Respondent to show cause why he should not be compelled to testify and produce the records demanded of him in the summons. A copy of the order was served upon Respondent Malnik who thereupon filed his answer to the Petition.

■ Petitioner first contends that the procedure agreed to by counsel for Respondent and counsel for the Internal Revenue Service avoiding the necessity of Respondent's personal appearance before Petitioner when both parties were aware that Respondent would, where appropriate, claim his constitutional privilege under the Fifth Amendment, constituted "making a blanket refusal to comply with the summons." Respondent filed an affirmative defense, verified by his counsel, setting forth the understanding arrived at by the representatives of both sides. Under these circumstances, the Court finds that the procedure followed by Respondent in claiming

his privilege was understood and agreed in advance. Under the circumstances, such procedure does not constitute "a blanket refusal" or a "blanket" claim of Respondent's privilege under the Fifth Amendment. This agreed procedure was no more than a useful and commendable effort by both sides to avoid going through a mere formality.

On January 10, 1972, the matter came on to be heard upon the show cause order previously issued by this Court. Petitioner urged that Respondent's claim that compliance with the summons would violate his rights under the Fifth Amendment to the Constitution of the United States was not well founded. It urged that it was a matter of record that Mr. Malnik had twice been prosecuted for the tax years which were the subject of the inquiry in the instant Internal Revenue summons and was acquitted of those charges. Respondent had been accused of alleged violations of Section 7206(1), Internal Revenue Code, 1954. In addition, Petitioners urged that the six-year Statute of Limitations for bringing a criminal action for violation of the Internal Revenue laws, 26 U.S.C. § 6531, had expired, since the last year under examination in the summons was 1963. Petitioners argued, therefore, that the United States cannot prosecute Malnik for the years involved in the summons. The Government also stated that the United States would not grant immunity from prosecution to Mr. Malnik.

■ The claim of the privilege under the Fifth Amendment to the Constitution of the United States may be claimed by the Respondent in a proceeding such as this where the Respondent is required to appear pursuant to a summons issued under the authority of the Internal Revenue Code and produce his records and give testimony to an Internal Revenue Agent. Where enforcement of such summons is requested of this Court, however, it is, for the Court to determine whether his silence is justified. The Court can require him to answer only if it clearly appears to the Court that he is mistaken in his claim

of privilege. Cf., Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 95 L. Ed. 344 (1951).

Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) is the leading case on the extent to which a witness may claim his privilege against self-incrimination and the attendant necessity and manner of establishing the incriminating effect of his potential answer. A clear and explicit interpretation of the effect of the *Hoffman* decision was given by Judge Hastie in United States v. Coffey, 3rd Cir. 1952, 198 F.2d 438, 440:

> "It is enough (1) that the trial court be shown by argument how conceivably a prosecutor, building on the seemingly harmless answer, might proceed step by step to link the witness with some crime against the United States, and (2) that this suggested course and scheme of linkage not seem incredible in the circumstances of the particular case. It is in this latter connection, that the credibility of the suggested connecting chain, that the reputation and known history of the witness may be significant."

■ In this connection, the Government, upon oral argument, stated that there was no criminal investigation being conducted of the Respondent Malnik and that his reputation and known history were not such to cause the Court or the Government to believe that answers to questions relating to the instant income tax investigation would tend to incriminate him. Respondent argues, however, that the Government's contention that the Statute of Limitations has expired for criminal prosecution and that having once been acquitted for the years in question forecloses the claim of the privilege, is not well founded as it totally overlooks the ability of the Government to bring additional charges for income tax violations against Mr. Malnik for the same years. We agree. In United States v. Beacon Brass Co., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61 (1952), the defendants were charged with an attempt to defeat and evade taxes owed by Beacon Brass, "by making certain false and fraudulent statements and representations, at a hearing and conference before  . . . the United States Treasury Department." The lower Court dismissed the indictment on the ground that these allegations did not make out the offense of "evasion". The Supreme Court, however, reinstated the indictment indicating:

> "The language of § 145(b) [presently 26 U.S.C. Section 7201] which outlaws wilful attempts to evade taxes *'in any manner'* is clearly broad enough to include false statements made to Treasury representatives for the purpose of concealing unreported income." 344 U.S. at 44–46, 73 S.Ct. at 79.

Respondent argues that prior to the issuance of the summons and within six years previously, many conferences were held by his attorneys in connection with the prosecution of the criminal charges under 26 U.S.C. § 7206(1). Respondent argues, without admitting, that it is entirely possible that false statements and representations were made at such hearings and conferences before the United States Treasury Department within the last six years. In addition, Respondent argues that certain records and books were presented to the Treasury Department at these hearings and conferences as well as to the Department of Justice. Again, without admitting that such representations, statements, or records were false, Respondent suggests that if in fact they were, as the Supreme Court held true in *Beacon Brass,* he could be prosecuted for a new Internal Revenue offense under 26 U.S.C. § 7201, Internal Revenue Code, 1954, for an attempt to evade taxes by making a false statement for the purpose of concealing unreported income. See also, United States v. Mousley, 194 F.Supp. 119 (E.D.Pa. 1961), aff'd., 311 F.2d 795 (1963), cert. den., 372 U.S. 966, 83 S.Ct. 1091, 10 L. Ed.2d 129.

In respect to the instant years, Respondent contends that he could be

charged with other offenses in addition to the potential violation of additional Internal Revenue Code sections, if he were obliged to answer pursuant to the summons and produce the documents in question. Respondent urges, again without admitting having committed the offenses in question, that the Government could charge him with perjury for having testified falsely in his own defense at the criminal proceedings two years ago and that other statements made by him might be claimed to be a violation of Section 1001, Title 18 U.S.C. Both these suggestions are founded on the premise that if obliged to answer pursuant to this summons, he would testify truthfully and such truthful answers could establish a prior untruthful answer given by him.

The Government argues that it is insufficient for Respondent to merely suggest that the incrimination is possible. The Government questions the Respondent's failure to "prove" that these potential prosecutions are in fact a real possibility. The Government, of course, misconstrues the meaning of Hoffman v. United States, supra, and its progeny. Mr. Justice Clark in *Hoffman* took pains to explain the "proof" obligation of the person claiming the privilege:

"However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the particularities of the case and by the facts actually in evidence.' See Taft, J., In ex parte Irvine (CCSD Ohio 1896) 74 F. 954,

960." 341 U.S. 479 at 486–487, 71 S.Ct. 814 at 818.

Again, we agree with the reasoning in United States v. Coffey, supra, 198 F.2d 438, pp. 440–441:

"Finally, in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection incrimination may be approached and achieved by obscure and unlikely lines of inquiry."

We conclude that under the setting in which the questions are sought to be asked and in light of the potential dangers pointed out by Respondent's counsel, it is apparent that even seemingly innocuous questions relating to Respondent's tax liabilities for the instant tax years and the production of his records clearly suggest potential connecting links through which Respondent's answers might lead to and might result in his incrimination.

■ Respondent concedes that the protection of the privilege applies only to past crimes alleged to have been committed prior to the time of the summoned testimony. United States v. Orta, 253 F.2d 312, 314 (5th Cir. 1958), cert. denied, 357 U.S. 905, 78 S.Ct. 1149, 2 L.Ed.2d 1156 (1958). As the Supreme Court stated in Glickstein v. United States, 222 U.S. 139 (1911), at page 142, 32 S.Ct. 71, at page 73, 56 L.Ed. 128:

" * * * the immunity afforded by the constitutional guaranty relates to the past, and does not endow the person who testifies with a license to commit perjury."

This Court initially entered an order to enforce the Internal Revenue summons on the theory that the Respondent was claiming fear of future violations of law as the predicate for his assertion of the privilege. Respondent was given an opportunity to reargue the issue and upon such reargument clearly stated, through his counsel, that the potential prosecu-

tion against which the claim of privilege was asserted related not to future violations but to the past potential violations as above analyzed. Respondent argues that as in United States v. Hoffman, 260 F.Supp. 566 (M.D.Pa.1966), to require him to testify under oath and to tell the truth might expose him to prosecution and furnish the proof that he *had given* false statements and committed violations of criminal provisions of the Internal Revenue Code and the Criminal Code. (26 U.S.C. and 18 U.S.C.) As in Hoffman v. United States, supra, we agree that Respondent will not be ordered to testify and the petition should be denied.

The Government contends that Petitioner Rosen is an Internal Revenue agent whose function is not the collection of information for criminal prosecution and that therefore the investigation being conducted by him pursuant to which he has issued this summons is such as would not allow the claim of the privilege. We find, however, that from all of the circumstances adduced at the hearings in this case, and in the setting in which the production of the records and questions are to be asked, the potential incrimination raised by the Respondent is a real and valid possibility. There is no prohibition, but, to the contrary, there is an *obligation* of the Revenue Agent to forward for criminal investigation and ultimate prosecution any potential violations of the law of which he may become aware. It is apparent that in this setting and in light of Respondent's prior testimony at trial, his previous production of documents, and the former representations made to agents of the Government, that Petitioner Rosen would indeed be expected to scrutinize and compare any statements made pursuant to the summons to those previously made by the Respondent. Furthermore, we can anticipate that Petitioner will review the records previously furnished by Respondent to

representatives of the Government or offered by him as evidence in his criminal trials. With that in mind, and considering the potential incrimination urged by Respondent's counsel, it is the finding of this Court that the claim of the privilege is well-founded in spite of the fact that Petitioner Rosen is not a criminal investigator and is not now conducting a criminal investigation.

Finally, the Government argues that this Court should consider and be bound by United States v. Newman, 5th Cir. 1971, 441 F.2d 165, 174, fn. 29, United States v. Prudden, 5th Cir. 1970, 424 F. 2d 1021, Mathis v. United States, 5th Cir. 1967, 376 F.2d 595, rev'd, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), and United States v. Ponder, 5th Cir. 1971, 444 F.2d 816. Each of these cases is concerned with the type and necessity of warnings given to potential defendants prior to any inquiry made by Government agents. The issue here is not the question of giving the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These cases go to the question of whether a warning may be required in order to later ascertain whether statements made by the witness were given voluntarily. In the instant proceeding, the witness need not claim any obligation to receive the warnings, since he is attempting to avail himself of his constitutional privilege and avoid giving testimony and producing his records. These cases do not hold that under circumstances such as these, Respondent is foreclosed from claiming his privilege. We therefore find these cases to be inapposite and conclude, as previously stated, in the setting in which the questions are to be asked and the records to be produced, and based upon all of the pleadings, affidavits, exhibits and memoranda filed by counsel, together with their respective arguments, that the privilege is well claimed and that the Petition should be denied.