**UNITED STATES of America**

v.

**Jeffrey L. FELDMAN and Paul J. Foont, Defendants.**

**No. 89 Cr. 765 (CSH).**

United States District Court, S.D. New York.

March 2, 1990.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City (Robert J. Cleary, Asst. U.S. Atty., of counsel), for U.S.

Kronish, Lieb, Weiner & Hellman, New York City (Alan Levine, Celia Goldwag Barenholz and Patricia S. Constantikes,* of counsel), for Paul J. Foont.

Shea & Gould, New York City (Michael S. Feldberg and Lloyd M. Eisenberg, of counsel), for Jeffrey L. Feldman.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Trial in this tax evasion case is scheduled to begin on April 23, 1990. Defendants now move for various pre-trial relief.

### Background

The indictment in the captioned case charges the defendants with various offenses arising out of certain financial transactions entered into by the Cralin partnerships.[1]

The government alleges that the defendants devised a plan to create approximate-

---

* Awaiting Admission in New York

1. The Cralin partnerships "were a series of New York limited partnerships that were promoted as dealers or broker-dealers in various securities, commodities, and options." Indictment at ¶ 2(a). Specifically, the Cralin partnerships refer collectively to the following limited partnerships: Securities Arbitrage Company, Capital Trading Group, Arbitrage Partners, The Money Market Group, Capital Futures Group, Multi-Asset Group, Cralin Securities Company, Cralin Metals Company, and Greystone Investment Group. *Id.* at ¶¶ 2(b)-(j).

Feldman was, at all times relevant to the indictment, a "Special Partner" in Securities Arbitrage Company, Capital Trading Group and Arbitrage Partners. As a special partner, Feldman had a 1% partnership interest in each of those partnerships. Feldman also had a "controlling interest in the managing or general partners" of The Money Market Group, Capital Futures Group, Multi-Asset Group, Cralin Securities Company, Cralin Metals Company, and Greystone Investment Group. *Id.* at ¶ 2(m).

Foont was, at all times relevant to the indictment, the Chief Trader for the Cralin partnerships. In addition, Foont was the President of the corporate general partner of Multi-Asset Group and the Executive Vice President of the general partners of Cralin Securities Company, Cralin Metals Company and Greystone Investment Group. *Id.* at ¶ 2(n).

ly $140,000,000 in false tax deductions for the 1981 tax year, such deductions to be passed on to the limited partners in the Cralin partnerships. The government charges the defendants with the creation and concealment of a fraudulent income deferral device aimed at evading taxes for the 1981 tax year.

Specifically, the defendants are charged with having entered into a secret oral agreement with New York Hanseatic Division ("New York Hanseatic")[2] on behalf of the Cralin partnerships pursuant to which New York Hanseatic was paid a set fee for creating records substantiating certain false transactions by the Cralin partnerships in government securities. These transactions led to fraudulent interest deductions by the limited partners in the amount of $140,000,000 for the tax year 1981. The second stage of the transaction was the reporting of false income in the amount of $132,000,000 for the tax year 1982. That false income was also passed on to the limited partners.

The charges in the indictment, all of which arise out of the basic scenario set forth above, are divided into three groups. Count 1 charges the defendants with conspiracy in violation of 18 U.S.C. § 371. The conspiracy is defined as one extending from "in or about 1981 through in or about the end of 1985", one object of which was the evasion of taxes due and owing in the 1981 tax year. Indictment at ¶ 1.

Counts 2 through 6 charge the defendants with tax evasion arising out of the 1981 tax returns of various limited partners. The return of each of those partners forms the basis for a separate count in the indictment. Although the offenses arise out of the 1981 tax returns, the indictment charges the defendants with tax evasion for the period 1981 through 1985.

Counts 7 through 15 charge the defendants with aiding and assisting in the filing of certain false tax returns for the Cralin partnerships. Each of the false filings referred to in this set of charges relates to the 1983 tax year.

Defendants move for various pre-trial relief. Specifically, defendants move to dismiss counts 1 through 6 as barred by the statute of limitations. Defendants further move for various discovery and a bill of particulars. Defendant Foont moves for a severance. I address these issues in turn.

*Discussion*

I. Statute of Limitations

It is common ground that the applicable statute of limitations in respect of both the conspiracy charged in count 1 and the tax evasion charges contained in counts 2 through 6 is six years. 26 U.S.C. § 6531.[3]

The indictment in the captioned case was filed on October 10, 1989. Thus, in order to be timely filed, the indictment must charge the defendants with crimes committed within six years of October 10, 1989, namely on or after October 10, 1983. Defendants contend that the indictment fails in that regard, while the government argues that both the conspiracy and the counts of evasion were not complete until the end of 1985, well after the October 1983 limitations cutoff date.

A. *Tax Evasion*

■ Defendants are charged with five counts of tax evasion in violation of 26 U.S.C. § 7201.[4] The elements of tax evasion are familiar:

---

2. New York Hanseatic operates "as a broker-dealer in government backed securities and other interest-rate sensitive instruments, to purchase significant tax losses for a fee, and to provide significant tax losses to willing purchasers for a fee." Indictment at ¶ 2(1).

3. 26 U.S.C. § 6531 provides in pertinent part:
No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws unless the indictment is found or the information instituted within 3 years next after the commission of the offense, except that the period of limitation shall be 6 years—
(1) for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner;
(2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof....

4. 26 U.S.C. § 7201 provides:

(1) an attempt to evade or defeat a tax or the payment thereof;

(2) an additional tax due and owing; and

(3) willfulness.

*Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965).

That first element of tax evasion, commonly referred to as the "affirmative act" requirement or the affirmative act of evasion, is described by the Supreme Court as "some willful commission in addition to the willful omissions that make up the list of misdemeanors," *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943), such as failure to pay a tax or failure to file a tax return in any given year.

> Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

*Id.* The question presented by the instant motion is when the statute of limitations began to run.

Defendants contend that the crime was complete, if committed at all, with the filing of the 1981 tax returns that contained the allegedly fraudulent deductions. In the alternative, defendants argue that the counts of evasion were complete with the filing of the 1982 tax returns that constituted the second prong of the attempt to evade taxes for the 1981 tax year. In essence, the government alleges that the defendants engaged in a course of conduct aimed at evading taxes for 1981, which continued through 1985 at which time the statute of limitations began to run. In consequence, the government argues, the instant indictment was filed only four years after the limitations period began to run, well within the limitations period.

The indictment alleges the following as affirmative acts of evasion occurring after October 10, 1983.

(d) From in or about 1981 through in or about 1985, FELDMAN and FOONT concealed the bogus, fraudulent and pre-arranged nature of the New York Hanseatic transactions from the outside accountants of the Cralin partnerships and attempted to mislead those accountants as to the true nature of the transactions.

(f) On or about December 1, 1983, FOONT made false statements and representations to an employee of the IRS, in the presence of FELDMAN and one of the outside accountants for the Cralin partnerships, for the purpose of concealing the fraudulent and pre-arranged nature of the tax losses passed on to the limited partner-investors of the Cralin partnerships, ..., to wit, FOONT told an IRS agent that there were no oral or written agreements affecting the 1981 transactions between the Cralin partnerships and New York Hanseatic.

(g) In or about 1984, FELDMAN made false statements and representations to an employee of the IRS, in the presence of FOONT and one of the outside accountants for the Cralin partnerships, for the purpose of concealing the fraudulent and pre-arranged nature of the tax losses passed on to the limited partner-investors of the Cralin partnerships, ..., to wit, FELDMAN told an IRS agent that there were no oral or written agreements affecting the 1981 transactions between the Cralin partnerships and New York Hanseatic.

(h) Between in or about mid–1984 and in or about April 1985, FOONT refused to answer questions posed by an employee of the IRS, in the presence of one of the outside accountants for the Cralin partnerships, for the purpose of concealing the fraudulent and pre-arranged nature of the tax losses passed on to the limited partner-investors of the Cralin partnerships,

---

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

..., to wit, FOONT refused to answer an IRS agent's question about the financing for the 1981 transactions between the Cralin partnerships and New York Hanseatic.

(i) Between in or about March 1985 and in or about April 1985, FELDMAN made false statements and representations to one of the outside accountants for the Cralin partnerships for the purpose of concealing the fraudulent and pre-arranged nature of the tax losses passed on to the limited partner-investors of the Cralin partnerships, ..., to wit, FELDMAN lied to the accountant about the financing for the 1981 transactions between the Cralin partnerships and New York Hanseatic.

Indictment at ¶ 7(d), (f)-(i).

Defendants concede, as they must, that false statements to an employee of the IRS constitute affirmative acts of evasion. *United States v. Beacon Brass*, 344 U.S. 43, 45–46, 73 S.CT. 77, 78–79, 97 L.Ed. 61 (1952) ("[t]he language of [26 U.S.C. § 7201] which outlaws willful attempts to evade taxes 'in any manner' is clearly broad enough to include false statements made to Treasury representatives for the purpose of concealing unreported income").[5] Rather, defendants contend that the alleged false statements, along with the other affirmative acts of evasion set forth in the indictment, occurred after the crime of evasion was complete.

Two separate but related issues are presented by these facts and the arguments of counsel. First, the question arises whether the elements of the alleged crime of evasion were present in 1981 or 1982. The next issue presented for consideration is whether, assuming that the ele-

---

**5.** Defendants take issue with two of the so-called affirmative acts of evasion, namely those contained in ¶¶ 7(h) and (i).

Paragraph 7(h) alleges that sometime in mid–1984 Foont refused to answer certain questions put to him by an employee of the IRS. Defendants argue that Foont had a Fifth Amendment right to refuse to answer whatever questions were asked of him by the IRS and such refusal can thus not constitute an affirmative act of evasion and should be struck from the indictment. Although defendants cite no case law in support of their argument, the government is in essence attempting to hold Foont's invocation of the Fifth Amendment privilege against him on the face of the charging instrument, in violation of basic principles of constitutional law.

It does not appear that there existed a duty on the part of defendant Foont to answer the questions asked by the IRS. Indeed, by letter dated December 7, 1989, counsel for defendant Foont served a request for a bill of particulars as follows:

7. *Paragraph 7(h)*—Identify any duty on Mr. Foont's part to answer the question allegedly put by the IRS agent.

The government declined to provide a response to defendant Foont's request. Affidavit of Celia Goldwag Barenholtz sworn to on December 19, 1989 at ¶ 7. Absent some showing by the government that Foont had a duty to answer the IRS's questions, or citation to case law demonstrating the propriety of the inclusion of Foont's failure to do so as an affirmative act of evasion or an overt act in furtherance of the conspiracy, I direct that the allegations be stricken from the indictment. The government has ten (10) days to make the requisite showing.

In respect of ¶ 7(i) which alleges that Feldman made false statements in March or April of 1985 to an outside accountant for the Cralin partnerships, defendants argue that even if the allegation is true, it does not amount to an affirmative act of evasion as to taxes due and owing in the 1981 tax year. Defendants make this argument without benefit of citation to case law, which points clearly in the opposite direction. The Supreme Court has held that "any conduct, the likely effect of which would be to mislead or conceal" constitutes an affirmative act of evasion. *Spies*, 317 U.S. at 499.

Congress did not define or limit the methods by which a willful attempt to defeat and evade might be accomplished and perhaps did not define lest its effort to do so result in some unexpected limitation. Nor would we by definition constrict the scope of the Congressional provision that it may be accomplished 'in any manner.' By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime.

*Id.*

ments of tax evasion were all present in 1981 or 1982, the limitations period began to run at that point, or after the last affirmative act of evasion, that being in 1985. I address these issues in turn.

In respect of that first issue, whether the elements of evasion were present in 1981, it is important to note that the tax returns at issue were not filed by the defendants. Rather, the fraudulent tax returns were filed by various limited partners of the Cralin partnerships to whom the tax benefits of certain false transactions were passed along. In these circumstances, it is difficult to view the allegedly false filings as a "watershed event" for purposes of the statute of limitations.[6]

It is defendants' course of conduct preceding and subsequent to the false filings that constitutes the evasion with which they are charged. Specifically, the government charges the defendants with a continuing series of acts ranging in time from the creation of the allegedly fraudulent transactions with New York Hanseatic to the defendants' continued and ongoing concealment of the true nature of those transactions. The question is whether the last act in such a course of conduct is that which properly triggers the statute of limitations.

While not cited in the briefs, *United States v. Shorter*, 608 F.Supp. 871 (D.C.D.C.1985), *aff'd*, 809 F.2d 54 (D.C.Cir.), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987) is instructive. In that case the government had charged the defendant in one felony count of "willful attempt to evade the payment of income taxes due for the years 1972 through 1983, in violation of 26 U.S.C. § 7201." 608 F.Supp. at 873. Shorter had filed allegedly fraudulent tax returns for the years in question. The indictment was returned in 1984. The defendant argued that the indictment was time-barred as to the tax years between and including 1972 and 1977 and consequently that allegations as to those tax years should be stricken from the indictment. The defendant further argued that the single felony count was impermissibly duplicitous and should be dismissed, inasmuch as it alleged twelve separate offenses, namely evasion for each tax year 1972 through 1983.

The district court rejected defendant's first claim, namely that certain of the allegations of evasion were time-barred.

[T]he statute of limitations does not *ipso facto* rule out prosecution with respect to taxes owing prior to 1978, for the offense of tax evasion is not necessarily committed only in the year when the tax was due and payable. That is so because the existence of a tax deficiency is but one of the two essential elements of the crime, the other being an affirmative act of willful evasion. *Sansone v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); *Spies v. United States*, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). An act constituting evasion which occurs during the limitations period brings the prosecution within the statute of limitations even if the taxes being evaded were due and payable prior thereto. *United States v. Trownsell*, 367 F.2d 815 (7th Cir.1966); *United States v. Mousley*, 194 F.Supp. 119 (E.D.Pa.1961), *aff'd without opinion*, 311 F.2d 795 (3d Cir.1963); *United States v. Sclafani*, 126 F.Supp. 654 (E.D. N.Y.1954), *aff'd on other grounds*, 265 F.2d 408 (2d Cir.1959); *see also, United States v. Malnik*, 348 F.Supp. 1273 (S.D. Fla.1972), *aff'd on other grounds*, 489 F.2d 682 (5th Cir.1974).

It follows that the indictment in this case is not subject to dismissal even with respect to the evasion of taxes due prior to 1978 if it is supported by proof of one or more affirmative acts of evasion committed by the defendant within the past six years if these acts relate to taxes due in earlier years.

*Id.* at 874 (footnote omitted). The court held that, on its face, the indictment did not

---

6. Indeed, the Supreme Court has recognized that affirmative acts of evasion, such as lying to the IRS, can support a prosecution for tax evasion, and consequently start the clock on the limitations period, even where the defendant never files a return. *Spies*, 317 U.S. 492, 63 S.Ct. 364.

suffer from a statute of limitations problem. That was so because the indictment alleged, and the government contended that it would prove, a continuing series of acts of evasion, or a course of conduct aimed at evading the payment of past taxes. Where defendant's conduct was of a continuing nature, the court viewed the limitations period as properly running from the last of defendant's actions, not the first.

The defendant in *Shorter* further argued that the single felony count was impermissibly duplicitous and should therefore be dismissed. The district court denied the motion. The court's analysis in that regard is illuminating. In determining whether "it is proper to charge a continuing scheme to evade taxes for several years", the court looked to "(1) the language and legislative history of the statute, and (2) the nature of the proscribed conduct." [7] 608 F.Supp. at 877. The district court found little guidance in the language and legislative history of the tax evasion statute and thus turned to the Supreme Court's opinion in *Spies*. Specifically, the district court turned to the Court's non-exclusive list of conduct amounting to affirmative acts of evasion. Much of the conduct envisioned by the Court as paving the way for a prosecution for tax evasion is that sort of conduct "which typically would be committed on a multi-year, continuing-course-of-conduct basis," *id.*, namely the keeping of a double set of books, concealment of assets or covering up sources of income, and acts of that nature. The type of conduct alleged in the instant indictment, continuing efforts by the defendants to conceal the fraudulent nature of the New York Hanseatic transactions from the outside accountants of the Cralin partnerships, is that same sort of continuing conduct faced by the district court in *Shorter*.

The district court further evaluated the duplicity argument with respect to the stat-

ute of limitations question. In what is essentially a fairness inquiry, the court observed that if the first count of the indictment were severed into twelve separate counts, each alleging a violation of the tax evasion statute for a single year 1972 through 1983, all of the acts of evasion occurring within the limitations period relating to those years could be introduced as to each year in which there was a tax deficiency.

> Thus, the first count of such a hypothetical indictment presumably would allege evasion of taxes due in 1972. In support of that count, the government would be entitled to introduce evidence of a tax deficiency in 1972 as well as of any and all affirmative acts of evasion after 1978 [the limitations cutoff date] which may have been intended to evade payment of the 1972 taxes.

*Id.* at 878–79. The court further noted that "[a]cts of evasion occurring between 1972 and 1978 would probably also be admissible, especially where—as in the instance of the establishment of a bank account in the name of another—they had continuing consequences." *Id.* at 878 n. 21. The court of appeals agreed with the district court's observations on this point. 809 F.2d at 57.

I find the court's reasoning in *Shorter* persuasive. Here, as in that case, the government alleges an ongoing course of conduct that constitutes the affirmative act of evasion. In essence, that course of conduct consisted of a series of lies and acts of concealment in respect of both the outside accountants of the Cralin partnerships and employees of the IRS. The government is not required by the statute of limitations to parse out that course of conduct in order to find the date of the first misstatement to an accountant. Of course, whether the government will be able to prove that sort of continuing conduct that the indictment suggests is ultimately a question for the jury.[8]

---

7. This is the analysis set forth by the Court in *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970), which defendants urge upon this Court.

8. I note that in *Shorter* Judge Greene instructed the jury that it must find that sort of continuous conduct alleged by the government in order to convict.

Judge Greene took steps to ensure against the problem "of a possible lack of unanimity of the

I am not faced with the situation where a defendant files a false tax return and then is called in by the IRS to talk about that return perhaps a decade or more after its filing. Defendants argue that if that individual were to give false testimony to the IRS, under the government's theory at bar he could then be prosecuted for tax evasion as to the return filed more than six years before the return of the indictment, based solely on the single affirmative act of giving false testimony to the IRS, a result with which they disagree.

But that is not the case at bar. In the instant case, defendants did not even file the returns at issue. Rather, it is their ongoing course of allegedly fraudulent conduct in its entirety that forms the basis for this prosecution. The statute of limitations thus cannot begin to run until the entirety of that conduct is complete, which in this case is the end of 1985. The indictment was timely filed in respect of counts 2 through 6, the tax evasion counts.

### B. *Conspiracy*

■ Relying on *Grunewald v. United States,* 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), defendants argue that the conspiracy count is barred by the six year statute of limitations.

In *Grunewald* the defendants were charged with and convicted of conspiracy to defraud the United States with reference to certain tax matters. The indictment charged the defendants with conspiring " 'to defraud the United States in the exercise of its governmental functions of administering the internal revenue laws and of detecting and prosecuting violations of

the internal revenue laws free from bribery, unlawful impairment, obstruction, improper influence, dishonesty, fraud and corruption....' " *Id.* at 394, 77 S.Ct. at 968. The indictment further charged that "a part of the conspiracy was an agreement to conceal the acts of the conspirators." *Id.*

The acts of concealment, such as bribery and the giving of false testimony, occurred within the six year limitations period. However, the defendants' improper efforts to get "no prosecution" rulings in two tax fraud cases were complete with the issuance of those rulings more than six years prior to the filing of the indictment. The question presented in *Grunewald* was whether the indictment, in light of the government's proof at trial, properly charged a single conspiracy, or whether the non-time-barred acts of concealment were merely part of a second conspiracy to cover up the first, namely that to obtain the no prosecution rulings. If there were two conspiracies then the first was time-barred. The Court said the following:

> [A]fter the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment.

353 U.S. at 401–02, 77 S.Ct. at 972. The Court rejected the government's argument that the defendants' efforts to conceal their earlier wrongdoings should be viewed as part of the original conspiracy to obtain the no prosecution rulings. Defendants at bar

---

jury under the indictment and the proposed evidence in the event of a guilty verdict." 608 F.Supp. at 881. Specifically, the Judge charged the jury on the requirement that an affirmative act of evasion occurring after 1978 must be proved by the government and that such act must relate to the alleged nonpayment of taxes for any one or more of the specific years 1972 through 1978. The court further employed "special interrogatories" or a special verdict form in order to make certain that each juror, in the case of a conviction, voted for that verdict based on the same affirmative act of evasion.

Moreover, the court instructed the jury that in order "to return a verdict of guilty on the felony

count, it must agree unanimously ... that these acts of evasion were part of a course of conduct which had as its purpose the willful evasion of the payment of such taxes." *Id.* In respect of that last instruction, the district court noted that "[a]lthough the existence of a course of conduct is not an element of the offense as such, it would be unfair to the defendant and inconsistent with the prosecutions' theory to permit it to rely on the existence of such a course to defeat the duplicity claim (as augmented by the statute of limitations defense), but then to have this factor ignored when the jury is called upon to make its decision." *Id.* at 881–82 n. 27.

argue that their alleged misstatements to agents of the IRS, which statements constitute three out of the four overt acts executed within the limitations period,[9] similarly constitute a second conspiracy to conceal the first.

This case is manifestly different from *Grunewald.* Here the conspiracy was entered into, in part, to accomplish the offenses of tax evasion charged in counts 2 through 6 of the indictment.[10] As discussed above, the misstatements to the IRS are an integral element of the substantive evasion charges underlying the conspiracy alleged in count 1. *Grunewald* itself suggests the importance of this distinction:

> By no means does this mean that acts of concealment can never have significance in furthering a criminal conspiracy. But a vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.

*Id.* at 405, 77 S.Ct. at 974 (emphasis in original). In this instance, the acts of concealment are central to the government's proof on the underlying evasion charges. In other words, they were in furtherance of one of the main criminal objectives of the conspiracy, tax evasion.

Defendants' motion to dismiss the conspiracy count as barred by the statute of limitations is denied.

## II. Discovery

### A. *Initiation of the Criminal Investigation*

Defendants seek discovery of a limited nature in respect of the start and duration of the IRS's civil investigation as well as the start of the criminal investigation. Specifically, defendants seek to determine whether summonses served upon the defendants were improper and thus whether statements given by the defendants in response to those summonses are subject to suppression.

The relevant statutory provision is 26 U.S.C. § 7602, which grants the IRS authority to serve summonses for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws", so long as a Justice Department referral is not in effect.[11] If a Justice Department referral is in effect at the time summonses are issued, defendants have the basis for a motion to suppress the statements made in consequence of those summonses. *See United States v. MacKenzie,* 777 F.2d 811, 819 (2d Cir.1985); *see also United States v. Piper,* 681 F.Supp. 833, 839 (M.D.Ga.1988).[12] Defendants at bar are not in a position to know whether a Justice Department referral was in effect at the time the summonses were issued without limited discovery from the government on the point. It is that discovery they now seek.

The government argues that "the only showing that the Government need make, at most, is an affidavit from the case agent affirming that there was no Justice Depart-

---

**9.** One of the three overt acts dealing with statements made to the IRS alleges Foont's refusal to answer questions of that agency. Indictment at ¶ 5(i). As discussed at n. 5 *supra,* that allegation is improper absent some showing by the government to the contrary.

The fourth overt act within the limitations period alleges that between March and April 1985, Feldman lied to one of the Cralin partnerships' outside accountants concerning the financing for the New York Hanseatic transactions.

**10.** The indictment also alleges that the defendants conspired to accomplish the acts of aiding and assisting in those false filings charged in counts 7 through 15.

**11.** The statute defines a Justice Department referral as being in effect when either (i) the IRS has recommended to the Attorney General "a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws", 26 U.S.C. § 7602(c)(2)(A)(i), or when "any request is made [by the Justice Department of the IRS] under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person", 26 U.S.C. § 7602(c)(2)(A)(ii).

**12.** I intimate no present view as to outcome of such a motion to suppress were it to be made.

ment referral at the time the summonses were issued." Government's Memorandum at 18–19. The government cites cases to that effect. *See Godwin v. United States,* 564 F.Supp. 1209, 1211 (D.Del.1983) (amendment of 26 U.S.C. § 7602 "did not alter the showing required by the government to establish a *prima facie* case for the enforcement of the summons"); *Drum v. United States,* 570 F.Supp. 938, 941 (M.D.Pa.1983) ("[t]he requisite showing of good faith may be made by the affidavit of the Internal Revenue Service Agent who issued the challenged summons and who is seeking enforcement thereof"), *aff'd without opinion,* 735 F.2d 1348 (3d Cir.1984).

The government supplies the affidavit of Special Agent Laura Wolf, the IRS special agent currently assigned to the case. Wolf states that a Justice Department referral was not in effect until approximately April 1987, some two years after the last statements alleged in the indictment. Affidavit of Laura Wolf sworn to on January 5, 1990 at ¶ 3. That affidavit is on information and belief. Wolf states that she "was initially assigned to the instant investigation in approximately March, 1987 [and] ... was the first IRS criminal investigator so assigned." *Id.* at ¶ 2. Apart from this general statement as to Wolf's association with the investigation, the affidavit contains no statement as to the source of her beliefs in respect of the date on which the Justice Department referral was in effect. Having submitted that affidavit, the government declares the ball to be in defendants' court.

By letter dated January 18, 1990, counsel for defendant Foont brings to this Court's attention a grand jury subpoena dated March 19, 1985 which seemingly relates to the captioned action. Specifically, the subpoena is one directed to the "Custodian of Records" at Cralin & Co., Inc. The subpoena directs production as follows:

Arbitrage Trading Partners
Greystone Investment Group
Money Market Group
Securities Arbitrage
Cralin Securities Co.
Cralin Metals Co.
Multi Asset Group
Cralin Governments Group
Cralin & Co., Inc.
Cralin Group, Inc.
Cralin Capital Partners
Cralin Capital Investment Associates
Capital Futures Group
Capital Trading Group

1. From January 1, 1980 to the present for the above-named entities all documents and material, including but not limited to tape recordings, correspondence, memoranda, notes, wires, telexes, checks, comparisons, confirmations, workpapers, traders' tickets, spread sheets, contracts, blotters relating any financial business or proposed dealings with Arbitrage Management Company.

2. Employment/Personnel and Compensation file for Paul Foont.

*NOTE:* If any document is not produced under a claim of privilege, provide a list of the documents not produced, their author, date, parties distributed to and a brief description of the subject matter so that the claims may be litigated.

The subpoena states that the information was sought in connection with the investigation of an alleged violation of 18 U.S.C. § 371 (conspiracy to defraud the IRS); 18 U.S.C. § 1341 (mail fraud); and 26 U.S.C. § 7206(2) (aiding and assisting in the filing of false tax returns). On its face, the subpoena appears to be one issued in connection with the grand jury investigation of this case. If that is so, a Justice Department referral was in effect at least as early as March 19, 1985, the date of the subpoena's issuance, rather than the April 1987 date suggested by the affidavit supplied by the government. Defendants' having provided such information, the ball is now back in the government's court.

I therefore direct the government to supply an affidavit(s) on personal knowledge of an IRS agent(s) or other official of that agency, and/or representatives of the Justice Department specifying the exact date on which a Justice Department referral was made in this case. The affidavit(s) should specify whether the grand jury subpoena of March 19, 1985 was issued in

connection with the investigation of this case. The government is to comply with this direction within ten (10) days of the date of this Opinion.

### B. *Notes of Defendants' Oral Statements*

Defendants move for production of any notes memorializing defendants' statements to the IRS. The government represents that no such notes were taken, thereby rendering the request moot.

### C. *Witness List*

■ Defendants move for production of "a list of the witnesses the government intends to call during its case in chief." Defendants' Memorandum at 24. The government opposes that application.

The lead case in this circuit on the subject of witness list disclosure is *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975). Both defendants and the government find comfort in *Cannone*. Defendants argue that certain language in *Cannone* supports the application for disclosure, while the government argues that the holding of the case clearly prohibits it. The court stated that it is "often desirable" to allow disclosure because

> without the benefit of such disclosure, the defense may be substantially hampered in its preparation for trial. At a minimum, pretrial ignorance of the identity of the prosecution's witnesses tends to detract from the effectiveness of the defense's objections and cross-examination.

528 F.2d at 301. However, the Second Circuit held that the district court had abused its discretion in providing the defendants with a witness list where "the defense made only an abstract, conclusory claim that such disclosure was necessary to its proper preparation for trial." *Id.* at 301–02.

Defendants next point to the factors enumerated in *United States v. Turkish*, 458 F.Supp. 874, 881 (S.D.N.Y.1978) in support

of their application. Those factors are as follows:

> (1) Did the offense alleged in the indictment involve a crime of violence?
>
> (2) Have the defendants been arrested or convicted for crimes involving violence?
>
> (3) Will the evidence in the case largely consist of testimony relating to documents (which by their nature are not easily altered)?
>
> (4) Is there a realistic possibility that supplying the witnesses' names prior to trial will increase the likelihood that the prosecution's witnesses will not appear at trial, or will be unwilling to testify at trial?
>
> (5) Does the indictment allege offenses occurring over an extended period of time, making preparation of the defendants' defense complex and difficult?
>
> (6) Do the defendants have limited funds with which to investigate and prepare their defense?

458 F.Supp. at 881.

While it is true that four out of the six *Turkish* factors support defendants' argument,[13] they have not come forth with "specific evidence of the need for disclosure", 528 F.2d at 302, as is required for the district court to properly direct disclosure. In essence, defendants argue that the government's investigation was a long one and the potential witness pool is a large one and a witness list would thus greatly facilitate defense preparation. That is not the specific showing contemplated by *Cannone*. Indeed, although the potential witness pool is large in an absolute sense, many of the witnesses are known to the defendants. Specifically, defendants are familiar with the former employees of the Cralin partnerships, the limited partners involved in the case and the outside accountants and lawyers with whom they dealt. Moreover, defendants have access to the record of and therefore knowledge of the witnesses called in *United States v. Atkins*, 87 Cr. 246 (MEL), a related trial arising out of the same transactions at issue here.

---

**13.** Specifically, the first two factors as well as    factors four and five point in defendants' favor.

Defendants' motion for the production of a witness list is denied.

### D. *Bill of Particulars*

Defendants outline eight basic areas as to which they seek a bill of particulars. Specifically, defendants seek immediate production of the following:

1. a list of those documents the government intends to introduce at trial;
2. the identities of those persons allegedly aided and abetted by the defendants in respect of the false income tax returns that form the basis for counts 7 through 15;
3. the substance of the alleged "secret oral agreements" entered into by the defendants;
4. identification of the alleged fraudulent sales literature distributed to potential investors in the Cralin partnerships;
5. the means by which the conspirators attempted to mislead the outside accountants of the Cralin partnerships;
6. the allegedly false information contained on the schedule K–1 forms sent by the Cralin partnerships to its partners;
7. whether the government intends to use similar act evidence at trial;
8. *Brady* impeachment material.

■ The second of these requests, namely one for the production of the identities of those persons whom the defendants are alleged to have aided and abetted, is on par with the traditional request for an enumeration of one's alleged co-conspirators. The government recognizes its obligation to provide that latter information to the defendants and has presumably now made the requisite production. The government is similarly directed to make production forthwith of the names of those persons whom the defendants are alleged to have aided and abetted.

■ As to a list of those documents which the government will seek to introduce at trial, I will not ask the government to finalize the minutiae of its case in this way some six weeks in advance of trial.

However, in this case where all concede that a significant number of documents have been produced by the government and will presumably be used at trial, it is right to narrow the field before trial in order to allow more effective case preparation by the defense. I therefore direct that the government make available to the defendants a list of those exhibits it anticipates might be used at trial within fourteen (14) days of trial.

■ The middle four requests are no more than a "demand for the government's evidence in advance of trial," *United States v. Gottlieb,* 493 F.2d 987, 994 (2d Cir.1974), and the "law does not impose an obligation [on the government] to preview its case or expose its legal theory." *United States v. Leonelli,* 428 F.Supp. 880, 882 (S.D.N.Y.1977). The requests are denied.

■ The government declined to respond to defendants' request in respect of whether it intends to offer similar act evidence at trial, but states that "[a]s the trial date approaches, we will address this issue anew." Letter of AUSA Robert J. Cleary dated February 22, 1989 at ¶ 13. The government is directed to make production in that regard within fourteen (14) days of trial.

■ As to the *Brady* impeachment material which defendants seek, the government recognizes its well-established obligation to produce that material and states its intent to make such production along with the 3500 material for each government witness. That is sufficient. *See, e.g., United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974) ("[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial"); *United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974) ("[n]either *Brady* nor any other case we know of requires that disclosures under *Brady* be made before trial"), *cert. denied,* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975); *United States v. Biaggi,* 675 F.Supp. 790, 812 (S.D.N.Y.1987) (" '[i]nformation bearing on a witness' credibility, such as grants or promises of immu-

nity, plea bargain arrangements, or other consideration promised by the Government in return for testimony must be turned over at the same time as other 18 U.S.C. § 3500 materials' ") (citations omitted); *United States v. Abrams*, 539 F.Supp. 378, 390 (S.D.N.Y.1982) ("*Brady* ... does not require the government to disclose information pertaining to the credibility of witnesses before that witness testifies") (citations omitted). Defendants' motion to compel immediate production of *Brady* impeachment material is denied.

### III. Severance

Defendant Foont moves for severance pursuant to the doctrine of *United States v. Finkelstein*, 526 F.2d 517 (2d Cir.1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). The *Finkelstein* doctrine is one that governs motions for severance based on attempts by one defendant to obtain the exculpatory testimony of his co-defendant. Foont contends that were he to be tried separately from Feldman, Feldman would exculpate Foont at Foont's trial.

The Second Circuit has enumerated four factors to be considered in evaluating such a claim for severance.

> (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege, ... (2) the degree to which the exculpatory testimony would be cumulative, ... (3) the counter arguments of judicial economy, ... and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment....

526 F.2d at 523–24 (citations omitted). I address these factors in turn.

As to the first factor, the likelihood that Feldman would waive his Fifth Amendment privilege and testify at a separate trial of Foont, Foont offers the affidavit of his co-defendant in which Feldman states that he would testify at Foont's trial as follows:

> On several occasions, including at least one occasion in 1981, Paul J. Foont and I discussed the fact that Price Waterhouse, the Cralin entities' accountants,

and Paul, Weiss, Rifkind, Wharton and Garrison, the Cralin entities' legal counsel, had stated, in substance, that the transactions entered into by the Cralin entities in 1981 were legal. During the time period covered by the transactions alleged in the indictment, Mr. Foont was an employee of the Cralin entities and reported to me and others who were in charge of and had ownership interests in the Cralin entities.

Affidavit of Jeffrey L. Feldman sworn to on December 19, 1989 at ¶ 2. Feldman further states that he is "willing to testify at a separate trial of Mr. Foont, even if that trial came before [his] own, and [he is] prepared to waive [his] fifth amendment privilege against self-incrimination at Mr. Foont's trial." *Id.* at ¶ 3. While the Feldman affidavit is certainly a strong suggestion that he would indeed testify at Foont's trial, there is no indication that he would not also testify at a joint trial of both defendants. Moreover, Feldman's affidavit suggests that he may indeed be willing to so testify given his representation that he would waive his Fifth Amendment privilege and testify at a trial of Foont even if that trial were scheduled before his own.

The second factor is the degree to which the proffered exculpatory testimony would be cumulative. Foont states that his defense at trial "will be that he lacked the requisite intent for the crimes charged." Defendants' Memorandum of Law at 34. Foont argues that Feldman's testimony goes directly to the central issue of Foont's intent in respect of the transactions at issue. The government argues that the proffered testimony is cumulative insofar as the accountants and lawyers had been misled into believing that the transactions were legal and will so testify. In other words, the accountants and lawyers will themselves testify that they advised the defendants that the transactions were legal, but that such advise was given based on fraudulent information. Assuming that Feldman would testify that the conversations were innocent discussions concerning whether the Cralin partnerships should enter into the subject transactions and Feld-

man informed Foont that the outside accountants and lawyers found no legal impediments to so doing, then such testimony would be probative of Foont's state of mind.

Considerations of judicial economy clearly weigh against severance. This is a complex case that will take more than one month to try and the burdens on limited judicial resources in trying the case twice are obvious. Moreover, witnesses would be twice inconvenienced and our jury system doubly taxed.

As to possible impeachment of Feldman's testimony, it is true that if Feldman were tried first and convicted, his testimony at a later trial of Foont would be subject to damaging impeachment. Of course, that is a problem easily remedied by scheduling Feldman's trial after that of Foont. However, the information contained in the *ex parte* affidavit of AUSA Cleary suggests certain possible areas of impeachment.

On balance, Foont has not satisfied his burden under *Finkelstein.*

### Conclusion

Defendants' motions are denied except as set forth in this Opinion.

The government is directed to proceed in conformity with this Opinion.

The foregoing is SO ORDERED.