**Commonwealth** of the
Northern Mariana Islands,
Plaintiff/Appellant,
**v.**
Quirino **Adlaon**,
Defendant/Appellee.
Appeal No. 93-029
Traffic Case No. 93-0614
July 28, 1994

Counsel for appellant: Cheryl M. Gill, Assistant Attorney General, Saipan.

Counsel for appellee: Daniel J. DeRienzo, Public Defender, Saipan.

BEFORE: DELA CRUZ, Chief Justice, and VILLAGOMEZ and ATALIG, Justices.

*DELA CRUZ, Chief Justice:*

The government appeals the dismissal of reckless driving and driving while under the influence of alcohol charges against the defendant, Quirino Adlaon. The trial court ruled that the government's failure to timely provide certain discovery material violated the defendant's right to due process. For the following reasons we vacate the order of dismissal and remand the case for further proceedings.

## I. PROCEDURAL AND FACTUAL BACKGROUND

Adlaon was arrested on February 7, 1993, and charged pursuant to 9 CMC §§ 7104 (reckless driving) and 7105 (driving under the influence of alcohol or other drugs). He was administered a blood alcohol content test ("BAC" or "Breathalyzer test") pursuant to 9 CMC § 7106. The result of the test, which we do not know, is not at issue in this appeal.

In an affidavit in support of his pre-trial motions, Adlaon stated that he was coerced into taking the Breathalyzer test.[1] Appellee's Supplemental Excerpts of Record at 32. He stated that an unidentified police officer slapped him into submitting to the test. He also asserted that the police withheld his car keys until the morning after the test, and only after he had signed a document acknowledging that he had consented to take the Breathalyzer test. The test, he contends, was taken in violation of the Commonwealth's implied consent law. 9 CMC § 7106(c).[2]

---

[1] On March 30, 1993, Adlaon filed motions for discovery, to suppress the Breathalyzer test results and relating to an expert witness.

[2] Nine CMC § 7106(c) provides:

> A person requested to submit to a test as provided above shall be warned by the police officer requesting the test that a refusal to submit to the test will result in revocation of his or her license to

Argued and Submitted December 9, 1993

On March 15, 1993, Adlaon filed an administrative complaint with the Department of Public Safety ("DPS") for the assault and battery he allegedly sustained the night he took the Breathalyzer test. The complaint was designated as DPS Case No. 93-1909. Documents regarding this complaint are not in the trial record.

On March 22, 1993, defense counsel Daniel DeRienzo wrote a letter to the director of DPS requesting information regarding the administrative complaint the defendant had earlier filed. A copy of the letter was sent to DPS's legal counsel. DPS did not respond.

On March 30, 1993, Adlaon filed three pre-trial motions along with his affidavit noted above, including a "Motion for Discovery." Among the discovery material requested, Adlaon sought disclosure of: (1) all information regarding DPS Case No. 93-1909 (request no. 36); (2) the witnesses the government intended to call at trial (request no. 1); and (3) all police officers who observed him within "one hour after his arrest" (request no. 19).

The motions were initially set for hearing on April 27, 1993. For reasons not set forth in the record the hearing on the discovery motion and the other two pre-trial motions was continued to May 4, 1993, which was also the date set for trial.

On May 4, immediately before the discovery hearing, the government produced a number of documents regarding DPS Case No. 93-1909. Following argument, the court found the government's tardy disclosure inexcusable. It then stated: "I think that the most fair, the most fair and most logical way to proceed in this matter would be to give this defendant another two week's time to prepare for trial." Appellant's Excerpts of Record [hereinafter "ER"] at 14.

Adlaon requested the court to clarify that the continuance was given to allow him time to analyze the materials received that morning, and was not for the benefit of the government. The government objected to Adlaon's attempt to foreclose it from supplementing its previously-disclosed discovery, witness list or evidence for trial.

___

operate a motor vehicle for six months. Following this warning, if a person under arrest refuses upon the request of a police officer to submit to the test, none shall be given, but the Court upon the receipt of a sworn report of the police officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the highways of the Commonwealth while under the influence of alcohol or any drug and that the person had refused to submit to the test upon the request of the police officer, shall revoke that person's license subject to review as provided for in Section 7108.

Adlaon's counsel then chose to forego a continuance and the matter proceeded to trial.

At the beginning of the government's case, the prosecutor informed the court that four witnesses would be called to testify. The defense objected, noting that in the government's earlier responses to discovery it had indicated that only two witnesses would be called.

The government's first witness was Officer Anthony Moreham, who stated that Officer Anthony Macaranas was at the arrest scene. ER at 58. At this point, defense counsel moved for dismissal of the case on the ground that he had not received any discovery information to the effect that Officer Macaranas was involved in the case. *Id.* at 61.

After hearing the arguments of counsel, the trial judge stated:

> It is very important for me, it is very important, that the government or especially the prosecution side, as much as possible . . . be truthful in their presentation of evidence or sharing of documents that would be used in trial.
>
> In this case, I cannot help it, but I have to dismiss both charges . . . .

*Id.* at 72.

The court noted that the case was being dismissed on "due process" grounds alone. *Id.* at 76. In a written order, the court added:

> The Defendant also represented to the Court that critical to the issue of this case is the assault and battery complaint filed at [DPS] . . . .
>
> The issue presented in the assault and battery complaint, DPS Case No. 93-1909, is critical for the defense. It happened during the period the Defendant was being held by the police. The resultant investigation by DPS and the turning over of such material(s) to the defense on the eve of trial is *prejudicial*. Without that information being provided [in] a timely fashion, the defense would not have adequate time to conduct further research or even issue subpoena(s) to any potential witnesses with respect to the allegation. *That issue alone, coupled with Officer Anthony Moreham's testimony that Officer Anthony Macaranas was*

*present at the scene where the Defendant was stopped, are material to the issue of exculpation.*

*Id.* at 79-80 (emphasis added).[3]

The government timely appealed the dismissal of the case.[4]

## II. ISSUES AND STANDARD OF REVIEW

The government raises two issues on appeal.

The government first contends that the trial court erred in dismissing this action on due process grounds because it failed to "produce documents pertaining to DPS Case No. 93-1909 until the day of trial" and refused to "list fact witnesses in response to the defendant's discovery requests."

■ We review de novo a dismissal of a criminal case on due process grounds. *Commonwealth v. Campbell*, 4 N.M.I. 11, 15 (1993), *aff'd*, 42 F.3d 546 (9th Cir. 1994).

■ Next, the government contends that, assuming it violated its duties to produce discovery, the trial court erred in choosing the sanction of dismissal to remedy the alleged violation. It asserts that the violation did not warrant dismissal. Our review of this issue is for abuse of discretion. *Id.*

## III. ANALYSIS

The trial court dismissed the case against Adlaon on "due process" grounds. The due process violation the trial court found concerned Adlaon's right to a fair trial. The factual basis of the court's decision, as we gather from the court's oral and written statement and order, was the government's untimely production of the docu-

ments in DPS Case No. 93-1909 and its failure to disclose as a witness the name of an officer who was present at the arrest scene.

The trial court determined that the results of DPS Case No. 93-1909 were critical to Adlaon's defense. The government, however, contends that DPS Case No. 93-1909 does not contain exculpatory material within the meaning of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Thus, it had no duty to disclose them and there was no due process violation. Also, the government contends that it was under no constitutional or statutory duty to disclose its trial witness list, and that the allegedly undisclosed name of the officer at the arrest scene was in fact disclosed to the defense well before the trial date.

We need to examine the circumstances leading up to the day of trial before a determination can be made that Adlaon's right to a fair trial and right to discovery were violated. If it is determined that there has been a violation, we shall then proceed to the issue of whether dismissal of the charges was an appropriate sanction.

### A. Due Process

We begin by noting that the discovery motion and the trial were set for the same day. Rather than confront the motion, the government produced documents on the morning before the hearing on the pre-trial motions. To ensure that Adlaon would not be prejudiced by the government's late disclosure, the court offered to continue the trial so that he would have the time to review the materials. Adlaon chose instead to proceed to trial. It was in this context that the trial began.

After the government's first witness, Officer Moreham, testified that Officer Macaranas was present at the arrest scene, the defendant immediately objected. Adlaon argued that Officer Macaranas was not disclosed as a witness as requested. The prosecutor disagreed, stating that Officer Macaranas was earlier identified as being present at the scene in a previously-disclosed document.[5] Nevertheless, the judge stopped the trial.

The trial court admonished the government that it should "as much as possible be truthful in their [sic] presentation of evidence or sharing of documents that would be used at trial." ER at 72. Viewing the issue relating to the defendant's assault and battery complaint as critical to the defense and material to the issue of exculpation, the court dismissed the charges.

---

[3] The court also noted that a memorandum sent by Superior Court Judge Alexandro Castro to the Attorney General in September 1992, pursuant to an order issued in an unrelated criminal action, *Commonwealth v. Villanueva*, Crim. No. 81-0082 (N.M.I. Tr. Ct. Sept. 21, 1981), construed Com. R. Crim. P. 16. Appellant's Excerpts of Record at 82-86. Com. R. Crim. P. 16, according to this memorandum and order, requires the government to disclose the "names and addresses of all potential witnesses" who may have some knowledge of the facts of the present case. The government failed to satisfy the dictates of this ruling.

[4] After the appeal was filed, the government moved to supplement the trial record with matters outside the record below. We denied the motion.

[5] This document is not a part of the record before us.

■ Under *Brady*, the government must disclose "evidence favorable to an accused" which is "material either to guilt or to punishment." 373 U.S. at 87, 83 S. Ct. at 1196-97, 10 L. Ed. 2d at 218. In *Campbell*, we held that the failure to disclose pretrial materials did not constitute a *Brady* violation where the content of the subject documents were unknown. 4 N.M.I. at 17. We also held that "a *Brady* 'claim will have no merit' where the disclosure of material evidence 'did not come too late to deprive the defendant of a fair trial.'" 4 N.M.I. at 15. Finally, we stated that an accused does not suffer a due process violation until he or she has been tried and convicted. 4 N.M.I. at 16.

■ Here, the matter was dismissed after the trial began but before the end of the government's case. There has been no conviction. Like *Campbell*, the nature of the alleged exculpatory material is unknown. The defendant would like us to infer that DPS Case No. 93-1909 contains per se exculpatory material because the prosecutor's and DPS's conduct in failing to disclose the material earlier connotes bad faith. The underlying issue we face is whether to uphold a finding of a due process violation that has no support in the record. We decline to do so.

The record before us does not disclose whether the materials handed over on the day of trial are in fact exculpatory. If they are exculpatory, then sanctions, even dismissal of the charges, may have been justified to cure the violation. However, we do not know the exculpatory or non-exculpatory nature of the documents. Neither did the trial court.

The documents regarding DPS Case No. 93-1909 may not be exculpatory. If so, there would be no duty to disclose them under *Brady* and no prejudice would result to the defendant because of non-disclosure. We hold that the trial court erred in finding a due process violation because it did not inquire into the nature of the documents, i.e., whether the documents are, in fact, exculpatory.

It clearly was irritating to the trial court for the government to produce the requested materials on the day of the discovery hearing and just before trial. The government should have known that unless the trial was continued, the materials handed over could be of no help to a defendant who had not reviewed them. The defense, however, chose to forego the continuance offered by the trial court. Adlaon cannot now argue that he was denied the right to a fair trial.

Although we hold that on the record before us there was no due process violation based on *Brady*, we go on to determine whether there was a *statutory* duty requiring disclosure of the documents or the identity of Officer Macaranas. We therefore next examine the prosecution's statutory duty of disclosure and the appropriateness of the sanction imposed.

## B. Disclosure under Com. R. Crim. P. 16(a)(1)(C)

The government does not adequately address its failure to timely disclose the apparently critical DPS record pursuant to Com. R. Crim. P. 16. Certainly, information regarding the voluntariness of the defendant's consent in taking the Breathalyzer test, at issue in DPS Case No. 93-1909, would fall under this category.

■ A defendant is entitled to discover documents which are "material to the preparation of his/her defense." Com. R. Crim. P. 16(a)(1)(C). The government failed in its duty to timely provide such information to enable Adlaon to adequately prepare for trial.

This failure appears unjustified, particularly in light of Adlaon's sworn statement that he was the subject of *physical* coercion by the police. The government failed in its duty to provide the defendant with potentially critical information after two requests (discovery request no. 36 and defense counsel's direct request to DPS), without justification.

■ Generally, with regard to discovery a continuance will cure any prejudice that might result due to the government's delay. *United States v. Peveto*, 881 F.2d 844, 861-63 (6th Cir.), *cert. denied sub nom.*, *Hines v. United States*, 493 U.S. 943, 110 S. Ct. 348, 107 L. Ed. 2d 336 (1989). However, where the government's actions are taken in bad faith, suppression of evidence may be appropriate. *United States v. Wicker*, 848 F.2d 1059, 1061-62 (10th Cir. 1988). Dismissal is, however, a remedy of last resort and should be employed where the defendant is prejudiced by the government's "flagrant" misconduct. *Campbell*, 4 N.M.I. at 18. We are not satisfied that such was the case here.

■ The trial court did not examine the requested documents and did not know whether they were material to the preparation of Adlaon's defense. The government's disclosure on the morning of trial appears to suggest that the documents fall within the purview of Com. R. Crim. P. 16(a)(1)(C). We agree with the trial court that the government's failure to timely disclose the documents was unjustified. We disagree, however, that dismissal was an appropriate sanction. We hold that the trial court abused its discretion by failing to continue the case, as it had earlier suggested. It should have imposed a sanction short of dismissal.

In *Campbell*, which involved a somewhat similar situation, we noted that the sanction of dismissal is a harsh and disfavored remedy. *Campbell*, 4 N.M.I. at 18. To warrant dismissal, the government's misconduct

must not only be flagrant but must also have prejudiced the defendant. *Id.* The defendant rejected the court's offer of continuance, and cannot now claim that the untimely production of the allegedly exculpatory documents in DPS Case No. 93-1909 would somehow have prejudiced him at trial. Moreover, the trial court made no specific finding that the prosecutor engaged in flagrant misconduct.

## C. Disclosure of the Witness List

 A defendant does not have a due process right to discover the government's witness list. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 845, 51 L. Ed. 2d 30, 42 (1977). Similarly, no right is provided by our rules of criminal discovery. *See* Com. R. Crim. P. 16. However, the court has the inherent power to order disclosure of witnesses to promote the efficient administration of our criminal justice system. *United States v. Moore*, 936 F.2d 1508, 1515 (7th Cir.), *cert. denied*, 502 U.S. ___, 112 S. Ct. 607, 116 L. Ed. 2d 630 (1991); *United States v. Eisenberg*, 773 F. Supp. 662, 683 (D.N.J. 1991). We review the trial court's decision to order disclosure for abuse of discretion. *Moore*, 936 F.2d at 1515; *Eisenberg*, 773 F. Supp. at 683.

 The disclosure of the government's witness list should not be ordered except upon a specific showing of need. A motion for disclosure has been denied where the defendant made "only an abstract, conclusory claim that such disclosure was necessary to its proper preparation of trial." *United States v. Feldman*, 731 F. Supp. 1189, 1199 (S.D.N.Y. 1990), *aff'd*, 992 F.2d 320 (2d Cir. 1993). For example, claims that the government's investigation was lengthy, the witness pool was large and disclosure would greatly facilitate defense preparation were deemed unspecific, and thus did not justify the requested relief in the form of government disclosure of its witnesses. *Id.*

 We therefore agree with the government that it was not required to disclose its witness list to Adlaon. We note that the trial court dismissed the case before it could order further disclosure. The dismissal was principally based on the government's failure to produce documents regarding DPS Case No. 93-1909. However, to the extent that the trial court's dismissal was based on (1) a violation of Adlaon's asserted due process right to discover the government's witness list, or (2) its failure to comply with an order in a previous, unrelated case[6] as

authority that the government must produce a witness list, we hold that the trial court erred.

## IV. CONCLUSION

We find the government's conduct in this case quite disturbing. Any allegation of physical coercion should not be taken lightly. Yet here, the government all but ignored Adlaon's complaint of physical coercion by the police, after two formal requests by the defense counsel and upon receipt of a sworn statement by Adlaon testifying to the abuses he suffered.

Clearly, the government should have responded immediately after being notified of such allegations of police abuse and coercion, particularly under the circumstances presented here. The government's conduct in ignoring Adlaon after he submitted a sworn statement to the court and tried in vain to use legal process to uncover the abuses indeed reflects poorly on the government. The trial court's displeasure with the prosecutor was justified. However, under the circumstances, its remedy was not justified.

There is no question that the government must address claims of police coercion promptly and openly. We therefore remand the case to the trial court to reconsider the imposition of sanctions. Adlaon contends that the Breathalyzer test was taken illegally, by coercion, and thus against his consent. If the trial court finds that Adlaon's allegations have merit, it may suppress the Breathalyzer results on the ground that the test was taken without consent in violation of 9 CMC § 7106.

We note that the reckless driving charge filed pursuant to 9 CMC § 7104 should not have been dismissed, as this charge is unrelated to the events leading to the Breathalyzer test and corresponding allegations of coercion. This opinion relates only to the charge under 9 CMC § 7105 and should not affect the charge of reckless driving under 9 CMC § 7104 on remand.

The order of the trial court dismissing the action is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion.